**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION**

THE ESTATE OF CHRISTOPHER KELLEY and JORDI KELLEY,

Plaintiffs,

v. Case No. 5:26-cv-58-MW-MJF

CORNELIO HUNT,

Defendant.
_______________________________________/

**REPORT AND RECOMMENDATION**

Defendant Cornelio Hunt, proceeding *pro se*, removed this civil action from a Florida state court to the United States District Court for the Northern District of Florida. Doc. 4. Plaintiffs, the Estate of Christopher Kelley and Jordi Kelley, move to remand this civil action and assert a factual attack on Hunt's claim that he is a citizen of Tennessee and not a citizen of Florida. Doc. 6. Because Hunt failed to carry his burden of establishing that the District Court enjoys subject-matter jurisdiction pursuant to 28 U.S.C. § 1332, the District Court should grant Plaintiffs' motion and remand this civil action back to the Florida court from which it originated.

## BACKGROUND

### A. Plaintiffs Commenced this Civil Action

On January 19, 2026, Plaintiffs commenced this wrongful death suit in the Circuit Court of the Fourteenth Judicial Circuit in and for Washington County, Florida. Doc. 6 at 1. Plaintiffs exclusively assert state-law causes of action related to negligence. In the complaint, Plaintiffs state that all of the parties are residents of Florida. Doc. 4-1 at 5.

On January 28, 2026, the Washington County Sheriff's Office served Hunt by delivering the summons to Hunt in the Washington County Sheriff's Office Lobby. Doc. 4 at 1; Doc. 6 at 1; Doc. 10 at 13.

### B. Hunt Files a Notice of Removal

On February 27, 2026, Hunt removed this action to the United States District Court for the Northern District of Florida. Doc. 4. In his notice of removal, Hunt asserted that the District Court has subject matter jurisdiction by virtue of the parties' diverse citizenship. *Id.* at 1. Hunt claims to be a "state citizen of Tennessee." *Id.* Hunt, however, also claims that his "actual abode" is "1777 Old Bonifay Rd, Chipley, FL" and that this location is "where [he] actually resides." Doc. 4-1 at 59.

As to Plaintiffs' citizenship, Hunt alleged nonsense: "Plaintiff I'm going to 26 years now I'm gong to go family are citizens of Florida." Doc. 4 at 1 (errors in original). But there appears to be no dispute that Plaintiffs are citizens of Florida.

**C. <u>Plaintiffs' Motion to Remand the Civil Action</u>**

On March 2, 2026, Plaintiffs moved to remand this civil action to the Florida Court from which it originated. Doc. 6. Plaintiffs assert that the District Court lacked subject-matter jurisdiction because all parties were residents of and domiciled in the State of Florida. *Id.* at 2.

**D. <u>Hunt's Response to Plaintiffs' Motion to Remand</u>**

On March 9, 2026, Hunt filed a response to Plaintiffs' motion to remand. Doc. 14. Hunt also attached exhibits to his response. Hunt argues that he was domiciled in Tennessee, and was not a citizen of Florida, at the time Plaintiffs commenced this civil action. *Id.* at 2.

**E. <u>The Jurisdictional Discovery Process</u>**

Plaintiffs moved for jurisdictional discovery. Doc. 16. After Hunt failed to respond to the motion, the undersigned granted Plaintiffs' motion and authorized the parties to conduct jurisdictional discovery. Doc. 18. Hunt then filed a frivolous objection to the undersigned's order—

presumably because he feared that the discovery process would result in evidence that he is not a citizen and domiciliary of Tennessee. Doc. 20.

Plaintiffs noticed Hunt's deposition for April 24, 2026. On the day of his scheduled deposition—April 24, 2026—Hunt filed an objection and a notice that he was not going to submit to the deposition on April 24. Doc. 25. Plaintiffs made no further effort to depose Hunt.

### F. The Evidentiary Hearing

On August 27, 2026, the undersigned held a hearing to afford the parties an opportunity to submit evidence regarding Hunt's state citizenship. Docs. 34, 35, 37. Because Hunt has the burden of demonstrating diverse citizenship, the undersigned permitted Hunt to proceed first. Hunt did not present any witnesses, but instead proffered exhibits. Doc. 39-3.

For their part, Plaintiffs called only Hunt to testify. While testifying under oath, Hunt was evasive and obstructionist in an obvious attempt to thwart Plaintiffs' counsel and the undersigned from determining Hunt's domicile. For the sake of brevity, the undersigned addresses only a few such instances below.

**1. *Hunt's Evasive Answers Regarding His Submission of a Statement that Hunt is not a Resident of Tennessee***

On March 31, 2026, Hunt commenced another civil action in the Northern District of Florida: *Cornelio Hunt v. James A. Zingale*, No. 5:26-cv-94-AW-MJF (N.D. Fla.). In that case, Hunt filed a notarized statement of Jennilyn Hunt. In this notarized statement, Jennilyn Hunt stated:

> I, Jennilyn Hunt, *the lawful wife of Cornelio Hunt*, am writing this letter to make a clear record of the truth. Our family is together. Our son, Hezekiah Hunt, lives with us, his father and mother. *We are not residents of Tennessee. We are living together in peace as a united family.*

Doc. 39-6 at 1 (emphasis added). Jennilyn Hunt's notarized statement is dated October 17, 2025—a mere three months before Plaintiffs filed the instant lawsuit. Jennilyn Hunt provided the notary with a Florida driver's license as a means of identification. *Id.* at 2; *Hunt*, No. 5:26-cv-94-AW-MJF, ECF No. 6 at 94.

At the evidentiary hearing, Hunt initially testified that he asked Jennilyn Hunt to sign this document. Once Hunt ascertained the contents of the document and its relevance to the instant case, however, Hunt changed his story and testified that he could not tell if this was a copy of the document he had filed. Hunt, however, offered no credible evidence to overcome the presumption that documents filed in a federal

court are exact copies of the documents filed. Jennilyn Hunt's sworn statement exists on the Northern District of Florida's case management and electronic filing system, and it bears a unique header that is automatically assigned to each document filed with the court.

Furthermore, when asked to read the relevant paragraph, Hunt stated that he "could not see" the quoted paragraph. Hunt then refused the undersigned's command to look at the document and read the relevant paragraph. The undersigned was unable to elicit any additional testimony regarding this notarized statement submitted by Hunt due to Hunt's obstreperous behavior.

**2. *Hunt's Evasive Answers Regarding His Submission of a Statement that Hunt Still is Married to and Lives with Jennilyn Hunt***

On April 27, 2026, Hunt filed another document signed by Jennilyn Hunt in the case *Cornelio Hunt v. James A. Zingale*, No. 5:26-cv-94-AW-MJF (N.D. Fla.). Doc. 39-8. This document is titled "Affidavit of Non-Enforcement And Consent to Dismissal." This affidavit was signed by Jennilyn Hunt on November 8, 2025. *Id.* In this affidavit, Jennilyn Hunt stated, "under oath," "I am Together with My husband Cornelio A. Hunt" and "We reside together as husband and wife, and we share custody of

our son." Doc. 39-8 ¶¶ 2–3 (errors in original). Jennilyn Hunt again provided the notary with a Florida driver's license as a means of identification. Jennilyn Hunt's signature block also includes a Florida address.

During the evidentiary hearing, the undersigned asked Hunt if he was the "Cornelio A. Hunt" that Jennilyn Hunt was referencing in her affidavit, Hunt responded, "I cannot remember my name right now."[1] When pressed, Hunt affirmed that he did not know his name.

In addition to his dodgy and selective memory regarding his name, Hunt stated he could not remember:

- whether he asked Jennilyn Hunt to write the affidavit on Hunt's behalf;
- whether he drafted the affidavit for Jennilyn Hunt to sign; and
- whether he was present when Jennilyn Hunt signed the affidavit.

[1] Hunt testified that he does not have any medical condition that would prevent him from remembering or recalling information. He also testified that he was not on any medication that would impact his ability to recall information.

Furthermore, Hunt refused to cooperate with the court and answer basic questions regarding the sworn affidavit. For example, Hunt contumaciously refused to answer whether he saw the statement "We reside together as husband and wife, and we share custody and care of our son." Hunt's obstructionist behavior made it impossible for the undersigned to elicit any additional testimony regarding this document.

**3. *Hunt's Evasive Answers Regarding his Vehicle***

Registering a vehicle in a state can be evidence of domicile in that state. *See Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1159 n.8 (11th Cir. 2021). On January 5, 2026—a mere 14 days before Plaintiffs filed this lawsuit and a mere 14 days before Hunt claims he was a citizen of Tennessee—Hunt registered a 2004 GMC van *in the State of Florida*. Doc. 39-3 at 5; Doc. 39-16.

Then, on June 22, 2026, Hunt stated—under the penalty of perjury—that he still owned this vehicle. Doc. 39-11 at 3.

But at the evidentiary hearing, when the undersigned asked where Hunt primarily uses and keeps this vehicle, Hunt testified he got "rid of it." When asked to clarify what he meant by "get rid of it," Hunt stated that he could not remember how he got rid of the vehicle. He further

stated, "Maybe I sold it." When asked when he got rid of the vehicle, Hunt responded that he could not remember but "it may have been this year or last year."

### 4. *Hunt's Evasive Answers Regarding 509 Helton Drive, Clarksville, Tennessee*

At the hearing, Plaintiffs' counsel asked Hunt where he resides. Before answering, Hunt looked at something in his wallet and then responded: "509 Helton Drive, Clarksville, Tennessee." It appeared to the undersigned that Hunt could not remember this address despite testifying that it is his residence.

Suspicious of Hunt's inability to remember his alleged address, the undersigned showed Hunt a photograph of the house located at 509 Helton Drive, Clarksville, Tennessee. *See* Doc. 39-10. Hunt did not recognize the residence. When pressed, Hunt stated that it "looked familiar" and that it could be the home in Clarksville, but he "was not sure."[2] Three times the undersigned asked Hunt whether he resided at this address in January 2026. *Three times Hunt refused to answer this*

[2] Public records indicate that from 2015 to 2017 Hunt owned the home and property located at 509 Helton Drive, Clarksville, Tennessee, but in 2017 a bank foreclosed on the property. Hunt does not dispute this.

*question*. After the undersigned warned Hunt that a refusal to answer likely would result in an adverse inference, Hunt answered, "I cannot remember."

As to his alleged residence in Tennessee, Hunt further testified:

- Hunt rents a room in the house;
- Hunt pays rent of $500 per month;
- Hunt pays his rent in cash;
- Hunt cannot remember the name of the person from whom he rents his room; and
- other people also live in the house, but Hunt cannot remember their names.

**5. *Hunt's Testimony that he "Sometimes" Stays with a Friend in Chipley, But He Can't Remember the Address***

Hunt also testified that he "sometimes" stays with "a friend" in Chipley, Florida. When the undersigned asked the address at which Hunt "sometimes" stays in Chipley, Florida, Hunt said he could not remember the address.

**6. *Hunt's False Denial Regarding Felony Charges***

After Hunt took the oath to testify truthfully, the undersigned engaged in a colloquy with Hunt to ensure that Hunt understood: (1) that

he was required to tell the truth and answer all questions honestly; (2) the failure to tell the truth could result in prosecution for perjury or making false statements; (3) that perjury and making false statements are felonies; and (4) that if Hunt did not understand a question or could not hear a question, he should ask for clarification from the person that posed the question. Hunt affirmatively stated he understood each of these points.

Nevertheless, Hunt testified falsely in response to a question by Plaintiffs' counsel. Plaintiffs' counsel asked if Hunt had ever been charged with a crime. Hunt responded in the negative. When pressed by the undersigned, however, Hunt admitted that in fact he had been charged with a felony in Tennessee. Specifically, the State of Tennessee had charged Hunt with child abuse and domestic assault.

## DISCUSSION

Because federal courts are courts of limited jurisdiction, a federal court cannot address the merits of a case unless and until it is assured of its subject-matter jurisdiction. *Belleri v. United States*, 712 F.3d 543, 547 (11th Cir. 2013). A "federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S.*

*Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *see Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1279–80 (11th Cir. 2001).

A defendant may remove a civil case from state court provided the case could have been brought in federal court. *See* 28 U.S.C. § 1441(a). "In removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) (quoting *Kirkland*, 243 F.3d at 1281 n.5). District courts must strictly construe removal statutes, and any doubts about jurisdiction must be resolved in favor of remand to the state court from which a civil action was removed. *King v. Gov't Emps. Ins. Co.*, 579 F. App'x 796, 800 (11th Cir. 2014); *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012).

When a party asserts a factual attack on subject-matter jurisdiction, the district court "is free to independently weigh facts" and resolve the jurisdictional issue on the merits, even when the parties dispute the facts. *Morrison v. Amway Corp.*, 323 F.3d 920, 924–25 (11th Cir. 2003); *Goodman v. Sipos*, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001); *Scarfo v. Ginsberg*, 175 F.3d 957, 960–61 (11th Cir. 1999). Under Rule 12(b)(1), a district court may adjudicate a factual challenge when "the

facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action." *Morrison*, 323 F.3d at 925. Because Hunt removed this civil action and asserts that the District Court possesses diversity-of-citizenship jurisdiction, Hunt bears the burden of establishing diversity of citizenship and the requisite amount in controversy. *Bowling v. U.S. Bank Nat'l Ass'n*, 963 F.3d 1030, 1034 (11th Cir. 2020); *Friedman*, 410 F.3d at 1353.

To have complete diversity, every plaintiff's citizenship must be diverse from the defendant's citizenship. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). For purposes of diversity jurisdiction, "a natural person is a citizen of the state in which he is 'domiciled.'" *Smith*, 991 F.3d at 1149; *see McCormick v. Aderholt,* 293 F.3d 1254, 1257 (11th Cir. 2002) (noting that for purposes of diversity "citizenship is equivalent to 'domicile.'"). "A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom[.]'" *Smith*, 991 F.3d at 1149 (quoting *McCormick*, 293 F.3d at 1257–58).

Domicile requires both residence in a state and "an intention to remain there indefinitely." *McCormick*, 293 F.3d at 1258 (internal quotation marks omitted). In other words, it is possible for someone to reside in one place but be domiciled in another. *See Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). Additionally, it is possible that a person can have multiple residences but *only one domicile*. *See Comm'r of IRS v. Est. of Sanders*, 834 F.3d 1269, 1279 (11th Cir. 2016). In determining a person's domicile—or more particularly, their intent to remain in a state—federal courts consider various factors including:

(1) the location of real and personal property;

(2) business ownership;

(3) employment records;

(4) the location of bank accounts;

(5) payment of taxes;

(6) voter registration;

(7) vehicle registration;

(8) driver's license;

(9) membership in local organizations;

(10) several other aspects of human life and activity, and

(11) sworn statements of intent.

*Smith*, 991 F.3d at 1149.

Diversity of citizenship must exist both at the time the complaint was originally filed in the state court and at the time of removal. *See Kellam v. Keith*, 144 U.S. 568, 568 (1892); *Reece v. Bank of N.Y. Mellon*, 760 F.3d 771, 777 (8th Cir. 2014); *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 346 (3d Cir. 2013). District courts may consider "post-removal evidence" as to such citizenship. *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000).

To the extent of the evidence in the record, the undersigned has considered the factors discussed in *Smith*. In light of the contradictory and inconsistent representations Hunt has made regarding his state and place of residence, his domicile, and his state of citizenship, and Hunt's evasiveness and refusal to answer questions, Hunt's testimony that he is a citizen of Tennessee is not credible. The undersigned finds that Hunt resided in Florida at the time Plaintiffs commenced this civil action and Hunt intended to remain in Florida. In reaching this conclusion, the

undersigned has considered all of the evidence in the record, including the following:

- In November 2023, Hunt purchased property at 1777 Old Bonifay Road, Chipley, Florida. Doc. 39-3 at 6–7; Doc. 39-6.

- Hunt testified that he purchased the property at 1777 Old Bonifay Road to grow food and raise animals.

- On or about February 5, 2024, Hunt obtained a permit to construct a driveway in order to obtain access to his property at 1777 Old Bonifay Road, and he began construction on the driveway. Doc. 37-1; Doc. 39-17.

- Between 2024 and 2025, Hunt was self-employed and his business address was "1317 Edgewater Dr. Unit 5136, Orlando, Florida 32804." Doc. 39-11 at 2.

- On October 17, 2025, Jennilyn Hunt stated under penalty of perjury that she and Hunt resided together and were not residents of Tennessee. Doc. 39-6.

- On November 8, 2025, Jennilyn Hunt stated under penalty of perjury that "I am Together with my Husband Cornelio A. Hunt . . . . We reside together as husband and wife." Doc. 39-8.

- On January 5, 2026, Hunt registered his vehicle with the Florida department of motor vehicles. Doc. 39-3 at 5; Doc. 39-16.[3]

[3] As noted above, because mere visitors generally do not register their vehicles in a state they merely are visiting, courts may treat the act of

- Under Florida law, non-residents generally are exempt from registering their vehicles in Florida. *See* Fla. Stat. § 320.37.

- Hunt was evasive and refused to answer questions regarding the location of his personal property, including the vehicle that he registered with the State of Florida on January 5, 2026.

- Hunt testified that on January 5, 2026, he applied for a commercial driver's license with the State of Florida.

- To obtain a Florida commercial driver's license, a person: (1) must be a resident of Florida; [4] and (2) must certify that the person is in fact a resident of Florida. Fla. Stat. § 322.03(4)(a).

- Hunt testified that he pays property taxes in Florida for the property located at 1777 Old Bonifay Road, Chipley, Florida, and most recently paid the taxes on January 5, 2026.

- Hunt did not offer any evidence that he pays property taxes in any state other than Florida.

- Hunt did not offer any evidence that he is registered to vote in Tennessee.

---

registering a vehicle in a state as evidence of the registrant's domicile in that state. *See Smith*, 991 F.3d at 1159 n.8.

[4] Florida law defines a "resident" as a person who has his . . . principal place of domicile in [Florida] for a period of more than 6 consecutive months, who has registered to vote in the state, who has made a statement of domicile pursuant to s. 222.17, or who filed for homestead tax exemption on property in this state." Fla. Stat. 320.01(34).

- Hunt did not offer any evidence that he sees a physician in Tennessee, and Hunt testified that he last saw a physician in Florida.

- Hunt has his mail delivered to an address in Orlando, Florida, and Hunt conceded that he previously resided in Kissimmee, Florida.

- Hunt testified that he "sometimes" stays with "a friend" in Chipley, Florida, but Hunt could not remember the address.

- *Three times* Hunt refused to answer whether, in January 2026, he resided at 409 Helton Drive, Clarksville, Tennessee. Only after the undersigned warned Hunt that his refusal to answer the question likely would result in the undersigned reporting Hunt's conduct to the District Court as evidence that Hunt was attempting to obscure his citizenship, Hunt eventually testified, "I don't remember."

- Although Hunt testified that he has resided at 409 Helton Dr. Clarksville, Tennessee for several years, Hunt was unable to provide the address from memory; in contrast, from memory, Hunt recited addresses of property he owned in Pennsylvania and Kissimmee, Florida *in the early to mid-2000's*.

- Hunt was unable to identify a photograph of the home he purportedly resides in at 409 Helton Drive, Clarksville, Tennessee.

- Hunt testified that he did not know: (1) the name of the owner of 409 Helton Drive; (2) the individual to whom Hunt pays cash to rent a room at that address, and (3) the names of other people who reside with Hunt at that address.

- Hunt submitted an exhibit in which he stated that 1777 Old Bonifay Road, Chipley, Florida, was his "actual abode" and where he resides. Doc. 4-1 at 59; Doc. 39-16.

- On March 31, 2026, Hunt submitted a verified complaint in Cornelio *Hunt v. James A. Zingale*, No. 5:26-cv-94-AW-MJF (N.D. Fla.). In that complaint, Hunt signed his name after the following verification: "I declare under penalty of perjury that the foregoing is true and correct." Doc. 39-4 at 24.

- In the verified complaint for *Hunt v. Zingale*, Hunt stated, "**38. STATE CITIZENSHIP**: I am a State Citizen of the Florida Republic." Doc. 39-4 at 11. At the evidentiary hearing, when the undersigned asked Hunt if he could explain this statement, Hunt became evasive and declined to answer.

- Also, on March 31, 2026, Hunt submitted a document titled "Emergency Petitioner's Pro Se Petition to Contest Driver's License Suspension and Denial of Passport." Doc. 39-5. This document was submitted as an exhibit to his verified complaint (discussed above) filed in *Hunt v. Zingale*. Hunt signed his name after making the following verification: "Under penalties of perjury, I declare that I have read the foregoing Emergency Motion and that the facts stated in it are true. *Id.* at 10, 11.[5]

- When asked whether he had ever been charged with a crime, Hunt lied under oath by responding in the negative. This further demonstrates that Hunt has no difficulty committing perjury.

- Hunt essentially testified that he was a citizen of Tennessee when he removed this case to the Northern District of Florida. The undersigned find this incredible and concludes that Hunt actually

[5] Hunt initially filed this document on March 10, 2026, in the Circuit Court of the Fourteenth Judicial Circuit in and for Holmes County Florida. Doc. 39-5 at 1. Then, on March 31, 2026, he filed it with the federal court as an exhibit to his verified complaint in *Hunt v. Zingale*.

is a citizen of Florida and was so when Plaintiffs filed this action and when Hunt removed this case.

- In his "Emergency Petitioner's Pro Se Petition," Hunt stated the following:

    - "**VERIFIED MISTAKE OF FACT—TENNESSEE FRAUD (F.S. § 61.13016)** . . . In 2019, both Petitioner and the Custodial Parent filed a **Joint Motion to Close Case** . . . because all partis had moved out of [Tennessee] and no further services were requested." Doc. 39-5 at 2.

    - "Petitioner appears by special Appearance only as a living man and a **naturalized State Citizen** of the **Florida Republic**." Doc. 39-5 at 3.

    - "I am a citizen of the State of Florida Republic." Doc. 39-5 at 2.

All of these facts indicate that Hunt regularly resides in Florida and intends to remain indefinitely in the State of Florida. Consequently, Hunt is a citizen of Florida. Hunt has not carried his burden of demonstrating that he is a citizen of Tennessee.

## CONCLUSION

Because Defendant Cornelio Hunt failed to carry his burden of establishing that he is a citizen of Tennessee and that the District Court possesses subject-matter jurisdiction, the undersigned respectfully **RECOMMENDS** that the District Court:

1. **REMAND** this civil action to the Circuit Court of the Fourteenth Judicial Circuit in and for Washington County, Florida; and

2. **DIRECT** the clerk of the court to take all necessary steps to effectuate the remand.

At Pensacola, Florida, on this 4th day of September 2026.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

**NOTICE TO THE PARTIES**

**The District Court referred this case to a magistrate judge to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the report and recommendation. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**